UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROBIN STINSON,
    Plaintiff,

v().                                                                                    CASE NUMBER:

AMERICAN MANAGEMENT GROUP OF
NORTH FLORIDA, LLC, KLOTZ GROUP
OF COMPANIES, AND JEFF KLOTZ,
Individually

    Defendants.
_____/

## PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Robin Stinson (hereinafter referred to as "Plaintiff" or "Ms. Stinson"), by and through the undersigned counsel, files this Complaint and sues Defendants, American Management Group of North Florida, LLC ("AMG"), Klotz Group of Companies ("Klotz Group") and Jeff Klotz ("Mr. Klotz") (Defendants AMG, Klotz Group and Mr. Klotz are hereinafter collectively referred to as "Defendants"), for violations of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq* and states as follows:

### INTRODUCTION

1.    This action is brought under the FMLA seeking damages to redress Defendants; unlawful employment practices, namely interference with and retaliation for taking protected leave under the FMLA, which resulted in Defendants' unlawful termination of Plaintiff.

### JURISDICTION AND VENUE

2.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and 1343 and 29 U.S.C. § 216 (b) and 217 because this action involves a federal question under the FMLA.

3.    Venue is proper to this Court pursuant to 28 U.S.C. § 1391(b)(2) because a

substantial part of the events or omissions giving rise to the Plaintiff's claim occurred in this Duval County, Florida.

## THE PARTIES

4. Ms. Stinson is an individual who is a resident of Manatee County, Florida and has resided there throughout all relevant times in this action.

5. Defendant AMG is a Florida limited liability company with its principal office located at 645 Mayport Road, Suite 5, Atlantic Beach, FL 32233.

6. Defendant Klotz Group is a Florida limited liability company with its principal office located at 645 Mayport Road, Suite 5, Atlantic Beach, FL 32233.

7. Upon knowledge and belief, Defendant Mr. Klotz is a resident of Ponte Verda Beach, Florida.

8. Defendant Klotz Group is the parent company and "operating platform" of the several related companies (these companies will hereinafter be collectively referred to as the "Klotz Companies") which includes:

   a. Just Multifamily, a Real Estate Brokerage Firm;
   b. AMG, a property management company;
   c. TKC Construction Group ("TKC"), a turn-key construction company;
   d. Apartment Asset Advisors, a mortgage broker;
   e. Ponte Vedra Capital, a mortgage broker;
   f. Triple Crown Communications, a digital media company;
   g. Tierra Linda Development, a development company;
   h. Investors, Indemnity, LLC, an insurance agency; and
   i. AmveStar Capital, a real estate sponsor and investment advisor.

9. The Klotz Companies are separate entities that are part of a single, joint employer for purposes of FMLA because:

   a. there is common management among the Klotz Companies as the executives at the Klotz Group (CEO, CFO, COO, General Counsel, etc.) all hold the same positions with each of the Klotz Companies;

    b. there is an interrelation between operations of the Klotz Companies as some of these companies build and manage residential properties and the others service and advertise these residential properties;

    c. centralized control of labor relations; and degree of common ownership/financial control.

  10. Jeff Klotz (Defendant Klotz) is and owner/founder/CEO of the Klotz Group and is owner/founder/CEO of each of the Klotz Companies, including Defendant AMG. Defendant Klotz was Plaintiff's employer within the meaning of the FMLA as he had significant operational control of the day-to day operation of Defendants Klotz Group and AMG; he was Plaintiff's day to day supervisor; he had the power to hire and fire employees, including Plaintiff; he supervised and controlled the conditions of employment for all employees of Defendants Klotz Group and AMG, including Plaintiff; he determined the rate and method of payment to Plaintiff; he guided company policy; he gave instructions to managers regarding the job duties of employees of Defendants Klotz Group and AMG; and he was the ultimate decision maker at Defendants Klotz Group and AMG.

  11. Plaintiff performed work at the direction of and for the benefit of Defendants in such a manner that they meet the definition of "employer" and she meets the definition of "employee" of these Defendants under 29 U.S.C. § 2611(3),(4).

## **GENERAL ALLEGATIONS**

  12. On or about July 1, 2021, Defendants offered Stinson the position of President of Defendant AMG, reporting directly to Defendant AMG's CEO, Defendant Klotz.

  13. Stinson accepted the position and relocated to Jacksonville, Florida.

  14. Stinson began working for Defendants on or about July 26, 2021.

15. Around the middle of January 2022, Mr. Klotz put Stinson in charge of managing the business of TKC, the construction division of the Klotz Group, in addition to her position as President of Operations of Defendant AMG.

16. Even though she was now managing two (2) companies for Defendant Klotz Group, Stinson was not paid any additional compensation.

17. At the end of June 2022, Stinson's father became seriously ill. Stinson asked Steve Jarrett, COO of the Klotz Group and its Subsidiaries ("Mr. Jarrett"), if he would approve her request to use three (3) days of her paid leave so she could go to Ohio to provide medical care assistance to her father. Mr. Jarrett granted Stinson's request for three (3) days paid time off.

18. However, during her brief, three-day leave, Stinson was advised that Defendant Klotz was unhappy that Mr. Jarrett approved Stinson's PTO and that Defendant Klotz made derogatory remarks about Stinson in a meeting of her peers and other executives of the Klotz Group and its Subsidiaries.

19. As a result, Stinson spent a good part of her three days paid time off with her father working, including doing damage control regarding the comments Defendant Klotz made.

20. In July 2022, Defendant Klotz advised Stinson she would be replaced as President of TKC.

21. Unfortunately, the health of Stinson's father continued to decline to the point where he needed to be transferred to a hospice care. On August 11, 2022, Stinson submitted to Defendants, including Defendant Klotz personally, a request in writing for leave under the FMLA, advising that she needed to be out of work starting August 12, 2022, and would be returning August 29, 2022, so she could provide caregiving services to her father.

22. However, Defendants ignored Stinson's request for FMLA leave and Defendant Klotz advised Stinson that he expected her to continue to perform substantive work during her

FMLA leave, including being able to "touch base" with him and others in management at the Klotz Group and its Subsidiaries on a "very regular basis."

23. In addition, after requesting FMLA leave, the Defendants, lead by Defendant Klotz, suddenly began sending Stinson emails criticizing her job performance.

24. Between August 11, 2022 and August 19, 2022, while on FMLA leave acting as caregiver for her gravely ill father, Defendants required Stinson to perform substantive work remotely in Ohio as Defendant Klotz messaged her daily regarding different work matters, required her to prepared certain work and attend telephonic and online meetings.

25. On August 20, 2022, Stinson's direct reports advised her that Defendant Klotz had hired Mike Sarsky as Director of Operations at AMG.

26. Upon knowledge and belief, although he was provided a different job title, Mr. Sarsky was hired to replace Stinson as President of AMG.

27. On the same day (August 20, 2022), Stinson again advised Defendant Klotz that she planned to return on August 29, 2022, as she had stated in her request for FMLA leave.

28. However, the following day (August 21, 2022), the health of Stinson's father took a turn for the worse and Stinson advised Defendants that while she still intended to return from FMLA leave on August 29, 2022, she would not be able to continue working remotely.

29. On August 26, 2022, Mr. Jarrett and Jace Simmons, CFO of the Klotz Group and its Subsidiaries, advised Stinson that Defendants were terminating her employment as President of AMG because "we just have to get on with business." Upon information and belief, the decision to terminate her employment for taking FMLA leave was made by Defendant Klotz.

30. Stinson has been damaged as a direct and proximate result of Defendants' illegal termination due to interference and retaliation with her FMLA leave and discrimination based on her gender and retaliation for complaining about gender discrimination.

31. Stinson has performed all conditions precedent necessary to the maintenance of this action.

## COUNT I
## FMLA INTERFERENCE

32. Plaintiff repeats each and every allegation of Paragraphs 1 through 31 as fully set forth herein at length.

33. Plaintiff was eligible for FMLA leave from Defendants because:

    a. Defendants each have more than 50 employees;

    b. Plaintiff had been employed by Defendants for more than 12 months and had worked more than 1250 hours for Defendants;

    c. Plaintiff had sought FMLA leave from Defendants for a qualifying reason – providing caregiving services for her gravely ill father; and

    d. Plaintiff provided Defendants with proper notice of her request for FMLA leave.

34. Defendants violated the FMLA by interfering with, restraining, and/or denying Plaintiff's exercise of her rights under the FMLA by:

    a. Requiring her to continue to perform substantive work during her unpaid FMLA leave; and

    b. Refusing her attempt to be reinstated to her full-time position or a reasonably equivalent full-time position by terminating her employment on the last business day of her FMLA leave.

35. Defendants' interference with, restraint, and/or denial Plaintiff's exercise of her rights under the FMLA harmed, injured and damaged Plaintiff, including but not limited to, lost wages, salary, employment benefits, or other compensation that she did not receive due to the FMLA violation.

36. The Defendants' failure or refusal to allow Plaintiff to take FMLA leave without performing daily substantive work and refusal to reinstated her to her position or an equivalent position interfered with Plaintiff's rights to take FMLA leave.

WHEREFORE, Plaintiff prays for judgment against the Defendant as follows:

a. Statutory damages for lost wages, benefits, and other compensation, plus interest thereon at the statutory rate, pursuant to 29 U.S.C.A. § 2617(a)(1)(A)(i) and 29 U.S.C.A. §§ 2617(a)(1)(A)(ii);

b. Additional liquidated damages in the amount of the above-requested award, pursuant to 29 U.S.C.A. § 2617(a)(1)(A)(iii);

c. Equitable relief in the form of reinstatement or front pay, as the court deems appropriate, pursuant to 29 U.S.C.A. § 2617(a)(1)(B); and

d. Attorney's fees, expert witness fees, and costs of this action, pursuant to 29 U.S.C.A. § 2617(a)(3), and such other relief as this Court may deem just and proper.

## COUNT II
## FMLA RETALIATION

37. Plaintiff repeats each and every allegation of Paragraphs 1 through 31 as fully set forth herein at length.

38. During her employment, Stinson engaged in statutorily protected activity under the FMLA as she requested eleven (11) days of protected FMLA leave in order to care for an immediate family member, her father, who was suffering from a serious health condition.

39. After Stinson properly requested FMLA, Defendants took adverse action against Stinson by suddenly giving her undeserved negative performance reviews and hiring a Director of Operations for AMG to take away Stinson's job duties as President of AMG. Shortly thereafter, Defendants took further adverse employment action against Stinson by terminating her employment completely on the last business day of her FMLA leave.

40. There is a direct causal link between Stinson's request for FMLA leave and Defendants' retaliatory treatment of Stinson and her termination, as it occurred shortly after Stinson requested FMLA leave.

41. Accordingly, Defendants retaliated against Stinson in violation of the FMLA by, among other things, giving Plaintiff negative performance reviews and terminating Plaintiff's employment.

42. Plaintiff has been harmed, injured and damaged as a direct and proximate result of Defendants illegal conduct.

WHEREFORE, Plaintiff requests this Honorable Court to:

   a. Statutory damages for lost wages, benefits, and other compensation, plus interest thereon at the statutory rate, pursuant to 29 U.S.C.A. § 2617(a)(1)(A)(i) and 29 U.S.C.A. §§ 2617(a)(1)(A)(ii);

   b. Additional liquidated damages in the amount of the above-requested award, pursuant to 29 U.S.C.A. § 2617(a)(1)(A)(iii);

   c. Equitable relief in the form of reinstatement or front pay, as the court deems appropriate, pursuant to 29 U.S.C.A. § 2617(a)(1)(B); and

   d. Attorney's fees, expert witness fees, and costs of this action, pursuant to 29 U.S.C.A. § 2617(a)(3), and such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demand trial by jury as to all counts so triable.

Respectfully submitted,

*s/ Dennis A. Creed, III*
Dennis A. Creed, III, Esq.
Florida Bar No. 0043618
Bradley R. Hall, Esq.
Florida Bar N. 0026172
Creed & Hall
13043 West Linebaugh Avenue
Tampa, FL 33626

Telephone: (813) 444-4332
Fax: (813) 441-6121
Email: dcreed@creedlawgroup.com,
bhall@creedlawgroup.com
Attorneys for Plaintiff